946 F.2d 884
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, Plaintiff-Appellee,
v.
MCKINLEY CENTER ASSOCIATES, Jane H. Gastman, Executrix of
the estate of Robert J. Gastman, Defendants-Appellants.
MCKINLEY CENTER ASSOCIATES, a Partnership by Franklin Griff,
M.D., General Partner, Jane H. Gastman, Executrix
of the estate of Robert J. Gastman,
Plaintiffs-Appellants,
v.
CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellee.
 No. 91-2311.
 United States Court of Appeals, Fourth Circuit.
 Argued July 10, 1991.
Decided Oct. 7, 1991.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, United States District Judge. (CA-89-1629-HAR) & (CA-89-2865-HAR)
 Argued: Patricia A. Smith, Sanders, O'Donnell & Smith, Alexandria, Va., for appellants.
 George Beall, Hogan & Hartson, Baltimore, Md., for appellee.
 On Brief: Dale Edwin Sanders, Sanders, O'Donnell & Smith, Alexandria, Va., for appellants.
 D.Md.
 AFFIRMED.
 Before PHILLIPS, MURNAGHAN and SPROUSE, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The Maryland district court, applying Connecticut substantive law, granted Connecticut Mutual's rescission of an insurance policy issued on Robert Gastman's life. The main issue on this appeal is whether the district court properly applied Maryland conflicts of law principles to choose the insurance laws of Connecticut over those of the District of Columbia to determine if rescission of the life insurance contract was permissible. Persuaded that it did, we affirm.
 
 
 2
 * Connecticut Mutual Life Insurance Company brought this action against Robert J. Gastman and McKinley Center Associates (hereafter "Gastman"), seeking rescission of a policy insuring Gastman's life.[1] The policy lapsed because Gastman failed to make a premium payment, and Connecticut Mutual argued below that it had been induced to reinstate the policy by the misrepresentations of Gastman in the application for reinstatement. On cross-motions the district court ruled that Connecticut Mutual was entitled to rescission of the policy, granted it summary judgment, and dismissed a related action which had been brought by Gastman and McKinley Center Associates for a declaration of the value of the policy.
 
 
 3
 The district court, sitting in Maryland, of course, applied Maryland conflict of law principles. Mrs. Gastman[2] contends that a proper application of those principles requires the choice of District of Columbia substantive law to govern this dispute. She argues that under the District law, Connecticut Mutual would be precluded from rescinding the insurance contract because, when Connecticut Mutual reinstated the policy, it failed to comply with a District of Columbia statute requiring insurance companies to deliver a copy of the application with an insurance policy when it is issued.
 
 
 4
 * On September 3, 1982, Connecticut Mutual issued a life insurance policy on the life of Mr. Gastman. The policy was delivered to McKinley Center Associates in Canton, Ohio. On February 28, 1987, while Gastman was living in the District of Columbia, the policy lapsed because of Gastman's failure to pay a premium. Gastman received an application for reinstatement entitled "Notice and Quotation." He completed the application, obtained a required signature from McKinley Center Associates, and returned the application, along with a check, on May 31, 1987.
 
 
 5
 One section of the application reads: "Since the premium due date, has the insured: A. Had any disease, disorder or disability? B. Consulted or been attended by any physician or surgeon?" Gastman disingenuously wrote "no" in response to each question. In fact, during the period in which the policy had lapsed, Gastman made four trips to physicians. One trip occurred five days before he signed the application. During these visits, Gastman complained of an allergic rash, fever, dizziness, lightheadedness, nausea, and a stiff neck. These symptoms were later diagnosed as HIV-related viral myelitis.
 
 
 6
 The reinstatement application completed by Gastman contained the following provisions:
 
 
 7
 It is understood and agreed that this payment does not reinstate this policy nor provide any insurance whatever unless and until the application to reinstate the Policy is approved by the Company in accordance with its standard underwriting rules and practices pertaining to reinstatements....
 
 
 8
 Any payment is to be held by the Company until it shall have either approved or declined this application and is to be returned if this application is declined.
 
 
 9
 After review of the application at its offices in Hartford, Connecticut, Connecticut Mutual reinstated coverage. The application was stamped "Reinstatement approved" and initialed by a Connecticut Mutual employee on June 23, 1987. Gastman was sent a "Record of Payment" on July 16, 1987, but Connecticut Mutual did not send him a copy of the application until he requested it after the commencement of this dispute.
 
 B
 
 10
 The parties filed their diversity complaints in the United States District Court for the District of Maryland.[3] Connecticut Mutual demanded rescission of the policy on Gastman's life because of his misrepresentations in the reinsurance application. Gastman's complaint demanded a declaration as to the value of the policy. After discovery, the district court on cross-motions for summary judgment on the rescission issue ruled that Maryland conflicts-of-laws principles require application of the law of the jurisdiction where the binding action on the reinstatement agreement took place. The court concluded that the final act required to create the binding agreement occurred in Connecticut, when Connecticut Mutual approved the reinstatement application, and therefore Connecticut law governed the validity of the reinstatement agreement. Applying Connecticut law, the district court held that Gastman's misrepresentations justified the rescission, granted summary judgment in favor of Connecticut Mutual, and dismissed the action concerning the value of the policy.
 
 II
 
 11
 On appeal, Mrs. Gastman does not dispute that under Connecticut law, Connecticut Mutual would be entitled to rescission. Instead, she argues that District of Columbia law governs and would preclude Connecticut Mutual from rescinding. We disagree, and, since we hold that Connecticut law governs the dispute, we need not address the issue of whether the District of Columbia rule requiring delivery of a copy of an insurance application with the policy would preclude rescission by Connecticut Mutual because of the deceased Gastman's misrepresentations.[4]
 
 
 12
 In deciding contractual issues, Maryland courts apply the law of the state where the contract was formed. Maryland Casualty Co. v. ARMCO Inc., 643 F.Supp. 430, 431 (D.Md.1986), aff'd, 822 F.2d 1348 (4th Cir.1987), cert. denied, 484 U.S. 1008 (1988). The locus contractus is the place where the final act necessary to make the binding agreement occurred. Sun Ins. Office v. Mallick, 160 Md. 7 (1930); Stout v. Home Life Ins. Co., 651 F.Supp. 28, 32 (D.Md.1986), aff'd. 818 F.2d 29 (4th Cir.1987). These principles apply to insurance contracts. See Peer v. First Federal Savings and Loan Association of Cumberland, 273 Md. 610 (1975); Sun Ins., supra.
 
 
 13
 In this case, the final act necessary to create the binding agreement occurred in Connecticut, when Connecticut Mutual approved the reinstatement application. We are persuaded that this act created a binding agreement by the language of the reinstatement application, which noted that the policy would be reinstated when the application was "approved by the Company in accordance with its standard underwriting rules and practices pertaining to reinstatements." Conversely, neither the posting of the payment check in the District of Columbia nor the receipt of the notice of reinstatement caused the policy to be reinstated. The final act necessary to make a binding agreement was approval by Connecticut Mutual which occurred in Connecticut.
 
 
 14
 Mrs. Gastman cites several cases for the Maryland rule that the locus contractus of an insurance policy is the state in which the policy is delivered and the premiums are paid. It is true that this proposition has been articulated by Maryland courts, but only in cases where a policy became effective upon delivery and payment of premiums. A careful review of those cases reflects that this proposition demonstrates only one instance of the general "final act" rule. In Sun Insurance Office, Ltd. v. Mallick, 160 Md. 71 (1930), for example, the Maryland Court of Appeals held that the locus contractus of an insurance contract is the place where the last act necessary to make the agreement a binding contract occurs. Id. at 81. Then, after reviewing the facts of the case, it concluded that the last act necessary to make the insurance agreement binding was its delivery and the payment of premiums. See also Grain Dealers Mutual Insurance Co. v. Van Buskirk, 241 Md. 58 (1965); Aetna Casualty & Surety Co. v. Souras, 552 A.2d 908 (Md.Ct.Spec.App.1989).
 
 
 15
 Finally, we find no merit in Gastman's suggestion that the Connecticut conflicts of law rule, rather than the Maryland principle, should govern the selection of the substantive principles involved here. We simply do not agree that any public policy consideration is implicated which outweighs Maryland's interest in having its own conflicts rules applied.
 
 
 16
 For the foregoing reasons, the decision of the district court is affirmed.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 The policy was initially owned jointly by Gastman and McKinley Center Associates, Gastman's former employer
 
 
 [2]
 This action was initially brought by Robert J. Gastman. After his death, his widow was substituted as a party
 
 
 [3]
 The deceased Gastman was a resident of Maryland, Connecticut Mutual is a Connecticut corporation with its principal place of business in Hartford, Connecticut, and McKinley Center Associates is an Ohio general partnership with its principal place of business in Ohio
 
 
 [4]
 The statute relied upon by Mrs. Gastman, D.C.Code Ann. § 35-203, states:
 Each life insurance company, benefit, order, and association doing a life insurance business in the District of Columbia shall deliver with each policy issued by it a copy of the application made by the insured so that the whole contract may appear in said application and policy, in default of which no defense shall be allowed to such policy on account of anything contained in, or omitted from such application.
 We take no position as to whether this statute would preclude Connecticut Mutual from invoking as grounds for rescission Gastman's misrepresentations in his application for reinstatement of the policy.